IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.H., By Conservator BETTY HARRIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JUAN CRUZ, ) <br> ) <br> Defendant. ) | Case No. 3:14-cv-02356 <br> Judge Aleta A. Trauger |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO EXCLUDE
TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES DETERMINATION**

Before the court is defendant Juan Cruz's Motion in Limine to Exclude Evidence of the Determination of the Tennessee Department of Children's Services ("DCS"), filed with a supporting Memorandum. (Doc. Nos. 518, 519.) The plaintiff opposes the motion. (Doc. No. 529.) For the reasons set forth herein, the motion will be granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff JH, then a minor, accused defendant Cruz of sexually assaulting him on December 7, 2013, while JH was incarcerated at the Williamson County Juvenile Detention Center ("JDC"). On the same day, DCS Case Worker Amira Walker and a detective with the Williamson County Sheriff's Office ("WCSO") interviewed JH, Cruz, and another employee of the JDC, Jodie Stinson. In addition, the WCSO collected DNA samples from both JH and Cruz.

Gregory Fort, a forensic biologist employed by the TBI, conducted testing on these samples in May and June 2014 and, on July 16, 2014, finalized a report summarizing his findings. As relevant here, Fort concluded that DNA evidence found on a penile swab collected from JH was consistent with Cruz's DNA profile, as established by specimens collected from him.

On the same day Fort finalized his report and released his findings to the WCSO, Walker, on behalf of DCS, issued an Investigative Summary and Classification Decision ("DCS Determination"). (Doc. No. 308-23.) This document includes (1) a statement of the allegation (sexual abuse) and the identity of the perpetrator (defendant Cruz); (2) a "Disposition Decision" that the allegation of sexual assault and the identity of the perpetrator were deemed "substantiated," as a result of which the investigation was "Assessed and Closed"; and (3) a summary of the investigation summary and conclusion that JH's allegations were substantiated.

The investigation summary includes summaries of the interviews of JH, Cruz, and Jodie Stinson. JH, most notably, accuses Cruz of performing oral sex on him and forcing him to perform oral sex on Cruz. (Doc. No. 308-23, at 2–3.) Cruz provided a timeline of his day and his supervision of the plaintiff, who had asked him to let him clean so that he could stay busy; he claimed that he kept JH busy cleaning until his stepmother arrived for a visit. Cruz denied molesting JH. (*Id.* at 3.) Stinson stated that she was in the room when JH told his stepmother that Cruz had molested him and that she had been present in the intake area near JH and Cruz for all but approximately one or two minutes of the entire period during which JH claims he was molested. She stated that she never saw Cruz go into the book closet where JH claimed to have been molested. She also stated that JH's entire demeanor changed when his stepmother arrived for the visit. (*Id.* at 4.)

The only direct evidence that Cruz sexually assaulted JH comes from JH's own allegations, which are basically refuted by both Cruz and Stinson. The entire basis for DCS's conclusion that the plaintiff's allegations were substantiated is that, "[d]ue to the results of the DNA testing performed on [JH] and Juan Cruz, and the child's disclosure of Sexual Abuse, there is sufficient evidence to support the allegation of Sexual Abuse in accordance with DCS policy." (Doc. No. 308-23, at 5.)

Based on Fort's report summarizing his analysis of the DNA evidence, Cruz was arrested and incarcerated pending trial. He was eventually acquitted of all criminal charges against him on January 26, 2016. This civil case was stayed for a substantial period of time pending resolution of the criminal case. In July 2018, in the context of ruling on the parties' Motions for Summary Judgment, this court stated, inartfully, that evidence of Cruz's acquittal "should be excluded." (Doc. No. 386, at 8.) More recently, the court granted the defendant's motion for reconsideration of that ruling, noting that there was "effectively no previous order in effect governing the admissibility *at trial* of the evidence of acquittal," as the earlier motion to exclude that evidence had been made in the context of the motions for summary judgment, and, at that time, the defendants agreed that evidence of the acquittal was irrelevant to the Motions for Summary Judgment but reserved the right to respond to any trial-related motion in limine. (*See* Doc. No. 525, at 8 (citing Doc. No. 372, at 1 n.1).) At the same time, the court declined to issue a ruling affirmatively admitting or excluding the evidence, finding that the "relevance and need for the evidence of acquittal will depend entirely on what evidence from the criminal trial ultimately comes into evidence or is used for a permissible purpose at trial and whether, in fairness to Cruz, clarification that he was acquitted of criminal charges becomes necessary. (Doc. No. 525, at 8.)

The defendant filed the present motion, arguing that the DCS Determination should be excluded under Rule 403, as its probative value, if it has any, is substantially outweighed by the danger of unfair prejudice and the risk of confusing or misleading the jury. In what the court considers to be an entirely tangential aside, the defendant also argues that the doctrine of collateral estoppel does not apply to exclude him from moving to exclude from evidence the DCS Determination. (*Id.* at 5.)

In his Response, the plaintiff argues that the DCS Determination is "relevant, admissible, and would not present a danger of misleading the jury about the status of the criminal case against Cruz because the administrative finding is independent of any criminal finding" (Doc. No. 529, at 1.) The plaintiff then devotes well over half of his eleven-page Response to his contention that, because Cruz is barred by the doctrine of res judicata/collateral estoppel from challenging the DCS Determination, his motion to exclude it from evidence at trial should be denied. (*Id.*)

The court finds that the collateral estoppel issue is a red herring. There is no basis for concluding that the DCS Determination has any estoppel effect in this federal proceeding and, even assuming that the defendant would be barred from challenging it in a state administrative proceeding, that fact would have no bearing whatsoever on the question of whether the DCS Determination is admissible as evidence at the trial on the claims now in this court. The court declines to address that question any further.

## II.    LEGAL STANDARD

Using its inherent authority to manage the course of trials before it, this court may exclude irrelevant, inadmissible, or prejudicial evidence through in limine rulings. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). However, unless such evidence is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), the "better practice" is generally to defer evidentiary rulings until trial, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context," *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). A ruling in limine is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38). Consequently, the court may revisit its in limine

rulings at any time and "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

**III. DISCUSSION**

The plaintiff contends, under Rule 403, that the probative value of the DCS Determination is substantially outweighed by the danger of unfair prejudice and of misleading the jury, in particular because, other than attending the three interviews conducted by the WCSO, DCS appears to have done no independent investigation. It did not reach a conclusion that JH's allegations were substantiated until Fort reported that DNA evidence potentially linked Cruz to JH. He also asserts that the DCS Determination is not actually relevant, as it does not have a "tendency to make [any] fact [at issue] more or less probable that it would with the evidence." (Doc. No. 519, at 3 n.3 (quoting Fed. R. Evid. 401).) He further argues that the danger of unfair prejudice would be substantially exacerbated if he is not permitted to introduce into evidence the fact that he was acquitted of the criminal charges against him.

The defendant also references *E.E.O.C. v. Ford Motor Co.*, 98 F.3d 1341 (Table), 1996 WL 557800 (6th Cir. Sept. 30, 1996), as "instructive." (Doc. No. 519, at 4.) In that case, the Sixth Circuit affirmed the district court's refusal to admit into evidence at trial the EEOC's "cause determination—its administrative investigation of the [employee's] EEOC complaint and its conclusion that the case had enough merit to prosecute on [his] behalf." *Id.* at *5. In concluding that the trial court had not abused its discretion in basically adopting a blanket rule excluding such cause determinations from evidence at trial, the Sixth Circuit observed that an EEOC cause determination "carries an evidentiary value of practically zero," particularly given that, when the EEOC chooses to bring a Title VII lawsuit on behalf of an employee, "the fact that the EEOC thought there was enough merit to warrant bringing that particular case against an employer is self-evident." *Id.* at *10. Moreover, the only plausible value of the cause determination "would be that

it presents the evidence of discrimination that the EEOC considered," but that evidence would also presumably be adduced at trial, such that the EEOC cause determination would be redundant. *Id.* And "an attempt by the EEOC to admit those parts of the EEOC cause determination [properly excluded at trial] becomes a not-too-subtle attempt to end-run the Federal Rules of Evidence." *Id.* The defendant likewise argues that, if his motion to exclude the DNA evidence is granted, any attempt to introduce the DCS Determination would be an "attempt to end-run the Federal Rules of Evidence." (Doc. No. 519, at 5 n.4.)

The plaintiff, in response, argues that, to the extent the plaintiff's motion can be construed as arguing to the contrary, the DNA Determination is plainly admissible under Rule 803(8) of the Federal Rules of Evidence, which excepts from the hearsay exclusionary rule public records that meet certain criteria. He contends that, although the defendant does not reference Rule 803(8), the defendant's argument appears to be that the DCS Determination lacks "trustworthiness," insofar as DCS did not conduct its own independent investigation. The plaintiff contends that such implication is false, as the DCS Determination reflects that both DCS Case Worker Walker *and* the WCSO detective interviewed JH, Cruz, and Stinson. (Doc. No. 529, at 3.)

The plaintiff also maintains that the DCS Determination is not akin to an EEOC cause determination, because the DCS's determination is not redundant and, instead, is "highly relevant to the claims against Cruz." (Doc. No. 529, at 2–3.) He argues that the plaintiff's contention that the DCS Determination is based on the "flawed DNA report" would go to the "weight of the evidence, not its admissibility." (*Id.*) In addition, he asserts that, insofar as the court had not, at the time the defendant filed his Motion in Limine, ruled on the admissibility of the DNA evidence, his argument that the DCS Determination is an attempt to make an end-run around such a ruling is premature. He also contends, for the same reasons asserted in his Response to the Motion in Limine

to exclude the DNA evidence, that TBI Agent Fort's DNA report and analysis are not "flawed." (*Id.*) Finally, the plaintiff denies that introduction of the DCS Determination would be unfairly prejudicial or have the potential to mislead the jury, because it is "independent of" the criminal trial and does not mention the outcome of the criminal proceedings, thus minimizing any risk of misleading the jury.

The court finds, first, that the DCS Determination clearly falls within the scope of Rule 803(8), which excepts from the hearsay rule any

> record or statement of a public office if:
>
> (A) it sets out:
>
> > (i) the office's activities;
> >
> > (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> >
> > (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid 803(8). The defendant does not argue to the contrary.

> Rule 401 provides that evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Under Rule 402, relevant evidence is generally admissible and irrelevant evidence is not. And Rule 403 permits courts to exclude relevant and otherwise admissible evidence if its "probative value is substantially outweighed by [the] danger of . . . unfair prejudice, . . . misleading the jury, . . . or needlessly presenting cumulative evidence."

To be clear, the defendant does not object to the admissibility of the DCS Determination on the grounds that it constitutes hearsay or does not fall within the scope of Rule 803(8). Moreover, although the defendant seeks to exclude the entirety of the DCS Determination, apparently including the summary of the interviews, his Memorandum in support of his Motion in Limine only refers to the potentially prejudicial effect of the DCS Determination itself, that is, the determination that the plaintiff's allegations of sexual assault by Cruz were "substantiated."

With regard specifically to the determination that the assault allegations were substantiated, the court finds that the DCS's substantiation decision has little, if any, relevance. While the determination of whether, in fact, Cruz sexually assaulted JH is the central factual issue to be resolved in this lawsuit, DCS's conclusion that JH's allegations were "substantiated" does not remotely have a "tendency to make [that] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). This is particularly so insofar as it is clear from the DCS Determination itself that DCS did not do any actual investigation of the allegations aside from the initial interviews. Regardless of whether Walker indeed participated in conducting those interviews, the DCS Determination does not reflect that Walker (or any employee of DCS) assessed the credibility of the interviewees or evaluated the plausibility of their versions of the events of the afternoon of December 7, 2013. Instead, once the TBI released its analysis of the DNA evidence, which it characterized as implicating Cruz, DCS simply accepted JH's account and the TBI's analysis.

The court has entered an Order denying, for the most part, the defendant's motion to exclude from evidence at trial the TBI's analysis of the DNA evidence. The jury will have the prerogative to accept or reject the plaintiff's expert's analysis and opinions related to that evidence. The fact that DCS decided to accept it does not make it inherently more reliable, but by giving the

DNA results an imprimatur of authority, the DCS Determination would have a likelihood of confusing the members of the jury by allowing them to conclude that the Determination has more probative value than it actually does. It may also mislead the jury into believing that DCS had more information than it actually had on which to base its conclusion that JH's allegations were substantiated.

Thus, even if the court presumes that the DCS Determination has some slight probative value and is therefore relevant, that very slight probative value is substantially outweighed by the danger of unfair prejudice and the risk of misleading or confusing the jury. As such, it will be excluded.

The same absence of relevance and risk of unfair prejudice and misleading or confusing the jury do not necessarily pertain to the investigative summary portion of the document, regarding which the defendant does not raise any specific objections. That portion of the document (exclusive of any part referring to the substantiation decision) remains admissible under Rule 803(8) and may also be admissible for other legitimate purposes under the Federal Rules of Evidence.

### IV. CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Motion in Limine to Exclude Evidence of the DCS Determination (Doc. No. 518) is **GRANTED IN PART AND DENIED IN PART**.

The motion is **GRANTED** with respect to the determination itself—that is, DCS's determination that JH's allegations that he was sexually assaulted by Cruz were "substantiated." If the plaintiff chooses to introduce the document (Doc. No. 308-23) into evidence, he will be required to redact from it parts B., C., the portion of part E. that begins with the heading "Summarize profession, medical or psychological findings or opinions" and incorporates reference to the TBI's DNA results, and the final paragraph of part E., beginning with "SI Walker is closing

and classifying the allegation of Sexual Abuse . . . as Allegation Substantiated Perpetrator Substantiated" and concluding with the sentence, "Case closed as Substantiated."

In other respects, the motion is **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge